## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CHARLES NELSON TILLMAN, III**                    **CIVIL ACTION**

**VERSUS**

                                                    **NO. 17-1066-SDD-RLB**

**CAROLYN W. COLVIN**
**COMMISSIONER OF SOCIAL SECURITY**

### NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 15, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CHARLES NELSON TILLMAN, III**                    **CIVIL ACTION**

**VERSUS**

                                                   **NO. 17-1066-SDD-RLB**

**CAROLYN W. COLVIN**
**COMMISSIONER OF SOCIAL SECURITY**

---

### REPORT AND RECOMMENDATION

---

Charles Nelson Tillman, III (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.    PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits (Tr. 275-281) on October 15, 2012, alleging that he became disabled on July 17, 2009 because of a disabling condition, namely degenerative back disease, bi-polar, mood disorder, and sleep disorder. (Tr. 275-81, 323). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 43-74) before issuing an unfavorable decision on June

23, 2014. (Tr. 107-17). Plaintiff's first request for review of the ALJ's decision (Tr. 215) was granted by the Appeals Council on November 15, 2015. (Tr. 150-54). The ALJ issued a subsequent unfavorable decision on June 2, 2016. (Tr. 7-34). Plaintiff filed a second request for review (Tr. 274) with the Appeals Council, which was denied on August 6, 2017. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20

C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    Plaintiff had not engaged in substantial gainful activity since October 5, 2012.

2.    Plaintiff had the following severe impairments: possible traumatic brain injury, borderline intellectual functioning, bipolar disorder, and borderline personality disorder.

3.    Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.

4.    Plaintiff had the residual functional capacity to perform medium work, except that he may not climb ladders, ropes, or scaffolds; he may perform work of a simple, routine nature with no public interaction and occasional interaction with coworkers and supervisors; and he may perform work requiring no decision-making, few changes in routine, and no production-type quotas that could cause stress.

5.    Plaintiff had no past relevant work.

6.    Plaintiff was 42 years old, which is defined as a younger individual age 18-49, on the date his application was filed.

7.    Plaintiff had a limited education and is able to communicate in English.

8.    Transferability of job skills was not an issue because Plaintiff did not have past relevant work.

9.      Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10.     Plaintiff was not under a disability since October 5, 2012.

## IV.    DISCUSSION

Plaintiff advances essentially four arguments in support of his request to reverse the ALJ's decision, which will be addressed within the framework of the five-step analysis. First, Plaintiff suggests the ALJ committed error when she found that Plaintiff did not meet or medically equal Listing 12.05. (R. Doc. 14 at 1, 3-4). Second, Plaintiff argues the ALJ improperly weighed the opinions of various psychological examiners. (R. Doc. 14 at 1, 7-8). Third, Plaintiff suggests the ALJ failed to account for Plaintiff's neurocognitive limitations in her RFC assessment. (R. Doc. 14 at 6-7). Lastly, Plaintiff argues that the ALJ's reliance on the testimony of the vocational expert was misplaced. (R. Doc. 14 at 1, 3-4).

### A.      Step Two – Listing Analysis

Plaintiff suggests that the ALJ committed error when she found that Plaintiff did not meet or medically equal Listing 12.05. (R. Doc. 14 at 1). In support of this position, Plaintiff argues that the ALJ's denial of a formally requested supplemental hearing for the purposes of obtaining testimony from a medical expert denied due process that would have required the ALJ to conclude that Plaintiff met or equaled Listing 12.05. (R. Doc. 14 at 4-5). Plaintiff also suggests that the ALJ's continued reliance on the opinion of Dr. Ray after the first review by the Appeals Council, without an updated report from Dr. Ray based upon additional evidence, tainted the analysis of the Listings. (R. Doc. 14 at 2-3). The Commissioner counters that this Court lacks jurisdiction to review the remand order of the Appeals Council and that, even if jurisdiction were proper, the ALJ properly followed the directives of that remand order. (R. Doc. 18 at 4-5). The

Commissioner also argues that Plaintiff was afforded adequate due process because he received notice of, and participated in, two administrative hearings. (R. Doc. 18 at 6).

The ALJ made several findings with regard to the Listings, and in particular, Listing 12.05. First, the ALJ found that Plaintiff had not met "Listing 12.05C" because his FSIQ was 71 "even with inconsistent effort," whereas Listing 12.05C requires a full-scale IQ of 60-70 accompanied by "another physical or mental impairment imposing an additional and significant work-related limitation of function, or such scores plus marked restriction in at least one domain of functioning." (Tr. 15-16). The ALJ considered the report of Rebecca MacAulay, M.A., the psychology extern, finding that it was not an acceptable medical source opinion, and even if it were, the findings and recommendations in her report did not support a finding that Plaintiff met or equaled Listing 12.05. (Tr. 16).

The version of Listing 12.05 in effect at the time of the ALJ's June 2, 2016 decision[1] require the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

---

[1] A Court considers the version of a Regulation in effect at the time of the ALJ's decision. *See, e.g., Evans v. Soc. Sec. Admin,* 2018 WL 922, at *4 (E.D. La. Jan. 31, 2018), *report and recommendation adopted,* 2018 WL 903430 (E.D. La. Feb. 15, 2018) (finding versions of listing not in effect at the time of the ALJ's decision inapplicable).

OR
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05 (effective May 24, 2016 to September 28, 2016).

Plaintiff does not argue that the ALJ should have found him to meet or equal Listing 12.05A or 12.05B. In addition, the only parts of the ALJ's decision regarding Listings 12.05C and 12.05D Plaintiff challenges is the ALJ's findings as to areas of functioning, potentially applicable to both 12.05C and 12.05D. (R. Doc. 14 at 5). To the extent the ALJ may have erred as to any other part of the Listing 12.05 analysis, therefore, that issue is not before the Court.

Regarding the requirement of a valid verbal, performance, or full scale IQ of 60-70 found in both 12.05C and 12.05D, the ALJ cites two sources. First, the ALJ cites the report of Dr. Lester Clayton Culver. (Tr. 713-719). Therein, Dr. Culver concluded that Plaintiff was "performing in the borderline range." (Tr. 717). He found Plaintiff to have a full scale IQ of 71, with a verbal comprehension score of 70, a perceptual reasoning score of 77, a working memory score of 80, and a processing speed of 79. (Tr. 717). The ALJ also cited the report of Rebecca MacAulay. (Tr. 16; Tr. 725-730). Ms. MacAulay administered what appears to be eight different tests to Plaintiff, and reports an IQ result of 70, but a "word reading" level of 75 and a verbal-fluency level of 80. (Tr. 726).

The ALJ noted that Plaintiff's "FSIQ was 71 even with inconsistent effort per consultative examiner Lester Culver in April of 2014... [thus representing] a minimum score." (Tr. 16). The ALJ also noted that Ms. MacAulay recommended "'more comprehensive

neuropsychological testing to determine the nature and degree of his cognitive deficits,' which suggests an awareness that her testing and recommendations were incomplete." (Tr. 16-17). Plaintiff does not challenge the ALJ's finding with regard to the requirement of both 12.05C and 12.05D that a claimant have a valid verbal, performance, or full scale IQ of 60-70, and the Court finds no error in the ALJ's analysis.

Plaintiff does not challenge the ALJ's finding that he did not meet the IQ requirement of Listing 12.05C or 12.05D. However, even assuming Plaintiff had a valid verbal, performance, or full scale IQ of 60-70, Plaintiff's argument still fails. Plaintiff argues that his "quantitative total score on the neurocognitive batter Standard Score of 67 constitutes a marked impairment of neurocognitive function" that was not considered by the ALJ. (R. Doc. 14 at 6). To the contrary, the ALJ considered the findings of Ms. MacAulay, giving them little weight in part because Ms. MacAulay noted in her report that his "slowed psychomotor process might be related to his poorly regulated [at the time] thyroid condition or pharmacological interventions for bipolar disorder," and that neither Dr. Culver nor Ms. MacAulay had the "opportunity to examine the claimant after treatment compliance and/or abstinence from abused substances." (Tr. 16). Additionally, as noted above, Ms. MacAulay's recommendation suggested an awareness that her testing and recommendations were incomplete. (Tr. 17).

The only argument Plaintiff makes is that the ALJ should not have ignored the "critical measurements" of an "additional constellation of marked impairment." (R. Doc. 14 at 7). But, the ALJ found that Plaintiff had only mild restriction of activities of daily living, and moderate restrictions in social functioning, and concentration, persistence or pace, and although Plaintiff had episodes of decompensation, the ALJ noted one to two episodes, but noted that

"decompensation has been linked to substance abuse and/or medication noncompliance." (Tr. 17).

"As with any medical evidence, the ALJ 'may make factual determinations on the validity of I.Q. tests' and may reject scores that are inconsistent with the record." *Cornish v. Colvin*, 2014 WL 1330308, at *7 (M.D. La. Mar. 31, 2014) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). In addition to the Court's findings as to the ALJ's assignment of weight to the various mental examiners in subsection (B) below, the Court does not agree that the ALJ ignored the findings of the mental examiners, but rather weighed those findings against the objective medical evidence and assigned weight accordingly. The ALJ considered the various intelligence testing scores, as well as the functional limitations found by the mental examiners, and weighed those opinions in conjunction with the objective medical records. Thus, the Court finds no merit to Plaintiff's argument that the ALJ ignored the findings of "marked impairment" by Ms. MacAulay.

With regard to Listing 12.05, Plaintiff also argues that the ALJ failed to "receive medical testimony when medical equivalence to a listing was alleged," in violation of SSR 96-6p and 20 C.F.R. § 404.1527(f)(2). (R. Doc. 14 at 5).  The Commissioner responds that Plaintiff was afforded adequate and meaningful opportunity to be heard by way of his two administrative hearings, and that the ALJ was not under an obligation to entertain a supplemental hearing despite Plaintiff's request. (R. Doc. 18 at 5-6).

In a letter to the ALJ dated May 7, 2016, counsel for Plaintiff submits a "recently received" sleep study, and requests a supplemental hearing wherein "a qualified physician, specializing in the treatment of traumatic brain injury, can give testimony to aid in the determination of whether Mr. Tillman's combined conditions of borderline intelligence in

attention, contecetration [sic] and social functioning support an equivalency determination, as required by SSR 96-6p and 20 CFR [4]04.1527(f)(2)." (Tr. 419).

SSR 96-6p, 1996 WL 374180, at *4 (July 2, 1996), expresses that an ALJ or the Appeals council must "obtain an updated medical opinion from a medical expert… [W]hen additional medical evidence is received that in the opinion of the administrative law judge or the appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." Plaintiff's argument seems to be that the March 3, 2016 sleep study reflects "excessive daytime sleep[i]ness due to central sleep disorder" that, in combination with borderline intelligence, would meet or equal Listing 12.05, and that testimony from a qualified physician specializing in the treatment of traumatic brain injury would aid in this determination. Assuming SSR 96-6p applies to a supplemental hearing, substantial evidence supports the ALJ's finding on the issue.

The ALJ denied Plaintiff's request for a supplemental hearing. (Tr. 11). In so doing, the ALJ's decision explicitly reflects that she considered the post-hearing polysomnogram report that was submitted. (Tr. 10; Tr. 838-42). She noted that the supplemental report "showed a normal amount of sleep, and differs little from a previous study." (Tr. 11). Based on this, she concluded that "[t]here is nothing in the additional material for a 'traumatic brain injury specialist' to evaluate." (Tr. 11). The Court does not find error in this conclusion. In the first sleep study, dated August 11, 2011, the "sleep quality" was graded a 1.5 out of 10, despite noting "good sleep efficiency and sleep architecture," which was suggestive of sleep state misperception. (Tr. 492). In the second sleep study, the physician interpreted primary snoring, a possible phase delay circadian rhythm disturbance, and that Plaintiff did not meet the criteria of obstructive sleep apnea. (Tr. 842). The only recommendations made in the 2016 sleep study were

an oral appliance for snoring, maintenance of ideal body weight, and evening melatonin coupled with early morning bright light exposure to shift the habitual sleep time. (Tr. 842).

As noted by the ALJ, there is nothing significant in the second sleep study that would justify a reversal of the ALJ's opinion on the grounds of her refusal to entertain a supplemental hearing to receive testimony from a traumatic brain injury specialist. SSR 96-6p, assuming its applicability herein, requires an updated medical opinion from a medical expert when the ALJ is of the opinion that the additional medical evidence may change the State agency's finding. Here, the ALJ expressed her opinion, which the Court finds to be supported by substantial evidence, that testimony from a traumatic brain injury specialist based on the additional sleep study would not aid in the Listing or equivalence analysis.

A claimant must show substantial prejudice in order to prove denial of due process in an administrative proceeding. *See Hayes v. Astrue*, 2012 WL 2994248, at *19 (S.D. Tex. July 20, 2012) (citing *Ka Fung Chan v. INS*,634 F.2d 248, 258 (5th Cir. 1981)). The second sleep study, which forms the basis of Plaintiff's argument regarding his denial of due process, contains no significant developments or differences from the first sleep study that would warrant a finding that the Plaintiff has suffered substantial prejudice by way of the ALJ's denial of a supplemental hearing. Accordingly, Plaintiff's argument regarding due process is without merit.

## B.    Weight Given to Mental Health Examiners

Plaintiff argues that the ALJ failed to give proper weight to the Psychological Screening Evaluation (Tr. 398-401) that is signed by Rebecca MacAulay, M.A., as a psychology extern, and Bryan J. Gros, Ph.D., as supervisor. (Tr. 7-8). In connection with this, Plaintiff argues that the ALJ incorrectly relied primarily on the "incomplete test" of Dr. Culver. (Tr. 7; Tr. 713-719). Plaintiff asserts that these alleged errors caused an improper RFC assessment. (Tr. 8). Plaintiff

posits that the ALJ's error in weight assigned to these particular medical opinions reflects the

ALJ's failure to comply with the remand order of the Appeals Council. (R. Doc. 14 at 2-3).

Additionally, Plaintiff argues that the ALJ committed error when she "continu[ed] to rely

primarily upon the opinion of state agency psychologist Kelly Ray." (R. Doc. 14 at 1). The

Commissioner responds that substantial evidence supports the ALJ's conclusion that Dr. Gros

was not involved in the examination of Plaintiff, and that, accordingly, the ALJ gave proper

weight to Dr. Culver's assessment over that of Ms. MacAulay. (Tr. 7-9). The Commissioner also

suggests that the Court lacks subject matter jurisdiction over the question of whether the ALJ

complied with the remand order of the Appeals Council, but even so, because the Appeals

Council denied Plaintiff's subsequent request for review, the Appeals Council found the ALJ to

be compliant with its remand order. (R. Doc. 18 at 4-5).

　　　　The ALJ did not consider the report of Ms. MacAulay to be an acceptable medical source

opinion because she found no indication that Dr. Gros, who signed as supervisor, "conducted any

testing or even examined the claimant." (Tr. 16). The ALJ also noted that, even if Ms.

MacAulay's report were to be considered an acceptable medical source opinion, it recognized a

possibility that Plaintiff's slowed psychomotor processes might be related to his poorly regulated

thyroid condition or pharmacological interventions for bipolar disorder, and that records indicate

his thyroid condition is now controlled and he has failed to take his bipolar medication regularly

or follow medical advice regarding substance abuse and sleep hygiene. (Tr. 16). The ALJ found

the evaluations of Dr. Culver and Ms. MacAulay to be similar scores, notwithstanding Dr.

Culver's finding of inconsistent effort. (Tr. 16). The ALJ also provides extensive summaries of

both Ms. MacAulay and Dr. Culver's findings in her RFC analysis, ultimately concluding that

Ms. MacAulay's opinion is "given less weight than the opinion of the DDS reviewing

psychologist (Exhibit 3A), and the one-time evaluation by Dr. Culver (Exhibit 12F) is given only partial weight." (Tr. 27). The ALJ then addressed Dr. Culver's indication that Plaintiff "might have 'marked' difficulties in getting along with other on the job," noting that opinion was qualified as occurring "over long periods," and restricted Plaintiff from stressful positions as a result. (Tr. 27). From a non-exertional standpoint, the ALJ's assessed RFC limits Plaintiff to work of a simple, routine nature with no public interaction and occasional interaction with coworkers and supervisors, work requiring no decision-making, few changes in routine, and no production-type quotas that could cause stress. (Tr. 17).

To begin, Plaintiff's argument that reversal and remand is warranted because the ALJ failed to comply with the remand order of the Appeals Council is without merit. The Appeals Council's remand order on the ALJ's first decision does not order the ALJ to reject the findings of Dr. Ray, but rather concludes that the ALJ's findings regarding Dr. Ray in the first decision were not based on the entire record, noting the Psychological Screening Evaluation of Ms. MacAulay and Dr. Gros. (Tr. 151). The Appeals Council also noted that the ALJ's original decision failed to account for the Medical Source Statement completed by Dr. Culver. (Tr. 151). In light of these issues, the Appeals Council directed the ALJ, on remand, to do the following:

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the nontreating source and non-examining source opinion pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source and non-examining source to provide additional evidence and/or further clarification of the opinion (20 CFR 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the

claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 152). Plaintiff appears to interpret this directive to mean that the Appeals Council ordered the ALJ to refrain from relying on Dr. Ray's opinion at all in her subsequent decision, stating "the ALJ substantively relied exclusively on Dr. Ray's outdated, deficient report to support her most recent decision." (R. Doc. 19 at 1).

The Court finds this statement to be inaccurate. The Appeals Council ordered the ALJ to re-consider her RFC with evidence from the entire time period, and to consider the non-treating source and non-examining source opinions, but does not give any directive as to the conclusion that must be drawn or the weight that must be given. (Tr. 152). Furthermore, Plaintiff is not correct in his assertion that the ALJ "substantively relied exclusively on Dr. Ray's outdated, deficient report." (R. Doc. 19 at 1). To the contrary, the ALJ's second decision gives "less weight" to Ms. MacAulay's report than to Dr. Ray's report, but does not indicate an exclusive reliance on Dr. Ray's report, and provides Dr. Culver's report "partial weight," furthering the conclusion that the ALJ did not rely "exclusively" on Dr. Ray's report. (Tr. 27).

The ALJ also dedicates a significant amount of review and analysis to chronicling Plaintiff's medical records in her RFC determination, broken down by time period, which includes the entire period at issue. (Tr. 18-27). The Appeals Council did not order the ALJ to refrain from giving any particular weight to Dr. Ray's opinion, but rather instructed that the ALJ consider certain evidence and provide certain explanations when opining on the weight to be

14

given, which is what the ALJ did in her second opinion. Lastly, the RFC assessed in the ALJ's second decision contains more non-exertional limitations than the first, including a decrease in public interaction from occasional to none, and adding occasional interaction with coworkers and supervisors, limiting Plaintiff to work requiring no decision-making, few changes in routine, and no production-type quotas that could cause stress. (*Compare* Tr. 137 *with* Tr. 17). This change is indicative of further consideration of the opinions of the psychological examiners.

The Fifth Circuit, in *Henderson v. Colvin*, 520 Fed. App'x 268, 273 (5th Cir. 2013), addressed a similar argument with regard to an ALJ's decision following a remand order from the Appeals Council. There, the Fifth Circuit noted the absence of mandatory authority supporting "the proposition that failure to comply with an Appeals Council order constitutes reversible error." In an apparent acknowledgement of the potential limits of judicial review, the *Henderson* court also noted that "the clear rule is that remand is warranted only where the ALJ's decision fails to apply the proper legal standard or the decision is not supported by substantial evidence." 520 Fed. App'x at 273. Despite its reservations, in "an abundance of thoroughness," the *Henderson* court went on to address the issue, finding that the "ALJ addressed each category that he was directed to evaluate on remand." 520 Fed. App'x at 273.

The same result is appropriate here. Even assuming it proper to review the issue of whether the ALJ complied with the remand order of the Appeals Council, the Court finds that the ALJ followed the instructions given. The Appeals Council directed the ALJ, on remand, to further consider Plaintiff's RFC, in light of evidence from the entire time period at issue, providing rationale with specific references, and to evaluate the non-treating source and non-examining source opinions with explanation of the weight given. (Tr. 152). The ALJ did this. (Tr. 18-27). Furthermore, the Court also agrees with the conclusion of the *Henderson* court that,

"[h]ad the Appeals Council thought that the ALJ had not complied with its remand order, the Appeals Council" could have granted Plaintiff's second request for review, which it denied. (Tr. 1).

The question then becomes whether substantial evidence supports the ALJ's conclusion that Ms. MacAulay's report was not that of an acceptable medical source, thereby justifying the "less weight" it was afforded. (Tr. 27). The ALJ summarized the substance of the findings in that report, and then stated, "[a]lthough this report is also signed by Bryan Gros, Ph.D., there is no indication that he participated in the examination or preparation of the report." (Tr. 24). The Commissioner cites several discrepancies between the dates Ms. MacAulay signed the records, and the dates Dr. Gros signed the records, arguing those discrepancies should be interpreted to mean that Dr. Gros was not involved in the evaluation to the degree necessary to deem the report one from an acceptable medical source. (R.Doc. 18 at 6-9). Plaintiff counters in Reply that the difference in the dates on which the report was signed "suggests that the signatures were not rubber stamped but effectuated only after a full review and approval by Dr. Gros." (R. Doc. 19 at 3).

"Only 'acceptable medical sources' can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight." *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 445 (5th Cir. 2009) (citing SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006)). "'Acceptable medical sources' are defined in 20 C.F.R. § 404.1513(a) and include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrist, and qualified speech-language pathologists." *Kim Nguyen v. Colvin*, 2015 WL 222328, at *8 (S.D. Tex. Jan. 14, 2015). No party argues Dr. Gros falls short of being an acceptable medical source. The

question is whether his signature as "Supervisor" on the Psychological Screening Evaluation signed by Ms. MacAulay as an extern qualifies that report as an acceptable medical source.

The court first notes that even if this is a report of an acceptable medical source, it would not automatically be given the controlling weight Plaintiff would have the Court assign. The records indicate that the Psychological Screening Evaluation was performed on March 19, 2014. (Tr. 725). A Progress Note is dated March 18, 2014, but the substance of that report seems to suggest that it is from the same visit as the Psychological Screening Evaluation. (Tr. 746). There is no other evidence in the medical records that either Ms. MacAulay or Dr. Gros evaluated Plaintiff on any occasion besides March of 2014. Dr. Culver, who Plaintiff also argues should have been given more weight by the ALJ, similarly evaluated the Plaintiff on only one occasion in April of 2014. (R. Doc. 19 at 4; Tr. 713-719). Neither Dr. Culver nor Ms. MacAulay/Dr. Gros would be considered a treating source[2] under 20 C.F.R. § 404.1527(a)(2), based on the absence of an "ongoing treatment relationship."

Having determined that no single opinion would be entitled to controlling weight, the Court lastly must address whether substantial evidence supports the ALJ's assignment of less weight to the opinion of Ms. MacAulay/Dr. Gros. The Psychological Screening Evaluation specifically lists Rebecca MacAulay as the "examiner." (Tr. 725, 727). The progress notes during that time period indicate that plaintiff's appointment was with Ms. MacAulay and that Ms. MacAulay would contact him if any further testing was needed. (Tr. 745, 746). The progress notes were electronically signed by Ms. MacAulay on the same date and time that they were prepared. Dr. Gros' signature is approximately 4 months later. The Court finds that there

---

[2] A "treating source" is defined as a medical source that has or has had 'an ongoing treatment relationship' such that the medical evidence shows that Plaintiff sees or has seen 'the source with a frequency consistent with accepted medical practice for the types of treatment.'" *Thomas v. Colvin*, 2017 WL 1193742, at *10 (M.D. La. Feb. 24, 2017) (citing 20 C.F.R. § 1502).

is substantial evidence to support a conclusion that Dr. Gros was not the examiner during the evaluation and testing of the Plaintiff but, as her supervisor who signed the evaluation, adopted the evaluation as his own.  While this could be sufficient to qualify the evaluation as an acceptable medical source, the Court is not necessarily satisfied, but need not determine, whether a supervisor's signature alone will qualify someone as an examining source.

Assuming that Dr. Gros is properly considered an examining source, "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (Former 5th Cir. Unit B 1981)).

Ultimately, the ALJ gave less weight to Ms. MacAulay's opinion than to that of Dr. Kelly Ray, and gave partial weight to the opinion of Dr. Culver. (Tr. 27).  The ALJ extensively discussed and considered the findings of Drs. Ray and Culver, as well as Ms. MacAulay, and discussed the rest of the medical records, some of which derive from treating sources.  After so doing, the ALJ identified the weight given to Drs. Ray and Culver, and Ms. MacAulay.  In addition to noting that there is nothing to indicate the Dr. Gros personally evaluated the Plaintiff, the ALJ still discussed that report, including the limited source material, notable discrepancies possibly due to "his poorly regulated thyroid condition," and determined that more testing would be needed to determine the nature and degree of any cognitive defects. (Tr. 23-24).  After considering all of the evidence, the ALJ determined that Plaintiff "has some mental/cognitive impairment and indicated specifically that she had "restricted the claimant from stressful positions" based on Dr. Culver's finding that Plaintiff would have marked difficulties in getting along with others on the job, noting that finding was qualified to be "over long periods." (Tr. 27).

The Court is mindful that it is not its role to reweigh the evidence in the record or substitute its own judgment. *Hollis v. Bowen*, 837 F.2d at 1383.  Substantial evidence supports the ALJ's conclusion with regard to the weight given to each of these opinions and the ultimate RFC assessment discussed below.

### C.    ALJ's RFC Assessment

Though not completely clear, Plaintiff also seems to suggest that the ALJ, by not giving more weight to the opinion of Ms. MacAulay and Dr. Gros, failed to properly incorporate Plaintiff's neurocognitive limitations in her RFC Assessment. In support of this argument, Plaintiff cites to 20 C.F.R. § 416.926a, the Regulation dealing with Functional Equivalence for Children. (R. Doc. 14 at 6). Plaintiff then goes on to state that "[t]his evidence suggests that Mr. Tillman meets or equals listing 12.05." (R. Doc. 14 at 7).

Assuming, *arguendo*, that Plaintiff has also specifically challenged the ALJ's RFC analysis, the Court finds substantial evidence to support the ALJ's conclusion. First, the ALJ concluded that Plaintiff had severe impairments of possible traumatic brain injury, and borderline intellectual functioning. (Tr. 14). In her RFC conclusion, the ALJ limited Plaintiff to work of a simple, routine nature with no public interaction and occasional interaction with coworkers and supervisors, work requiring no decision-making, few changes in routine, and no production-type quotas that could cause stress. (Tr. 17). These findings indicate consideration of Plaintiff's intellectual limitations.

Furthermore, as thoroughly outlined by the ALJ, substantial evidence supports this RFC assessment. There is evidence in the record, by way of self-reporting history and reports of family members, that Plaintiff was kicked in the head by a horse when he was about 19 years old. (Tr. 439, 705, 715, 743). There is also evidence of cognitive difficulties. (Tr. 440, 717, 726,

737, 746, 750, 758, 762). Plaintiff also consistently reports poor sleep quality. (Tr. 680, 691, 693, 695, 697, 752).

Notwithstanding the foregoing evidence, Plaintiff reports completing high school, though he notes that the school he attended was not accredited. (Tr. 78). Several records indicate a finding of normal or average intelligence. (Tr. 508, 683, 700, 706). While Plaintiff argues he suffered a traumatic brain injury as the result of a kick in the head by a horse when he was about 19, he reported in January of 2013 that his head injury came from a motor vehicle accident. (Tr. 505). The ALJ also noted that there was no objective evidence of any traumatic brain injury from 1990. (Tr. 14).

There is also significant evidence that Plaintiff failed to cooperate with treatment, either by not maintaining his medicine regime, or not following through with sleep hygiene recommendations. (Tr. 739, 741, 760, 762, 764, 766). For example, in a December 11, 2015 visit with a social worker, Plaintiff reported he had been off his medication for 9 months. (Tr. 760).

In her RFC assessment, the ALJ summarized the Plaintiff's testimony, and the testimony of his sister. (Tr. 18-19). The ALJ reviewed and summarized Plaintiff's medical records prior to his protective filing date (Tr. 19-20), after his protective filing date (Tr. 20-25), as well as the records that post-dated the ALJ's June 23, 2014 decision (Tr. 25-27). Furthermore, the ALJ incorporated specific non-exertional limitations into Plaintiff's RFC supported by her review of the record, including limiting Plaintiff to work of a simple, routine nature with no public interaction and occasional interaction with coworkers and supervisors, and work requiring no decision-making, few changes in routine, and no production-type quotas that could cause stress. (Tr. 17). Based on the record as reviewed by the Court, as well as the thorough summary provided by the ALJ in her RFC analysis, the Court finds Plaintiff's argument regarding the

ALJ's failure to adequately consider Plaintiff's alleged neurocognitive defects to be without merit.

> **D.    Testimony of Vocational Expert**

Citing Plaintiff's alleged "psychomotor and visuospatial limitations," Plaintiff argues that the vocational expert's "inability to comment upon the effect of Mr. Tillman's specific neurocognitive deficits demonstrates the need for supplemental testimony by a medical expert to determine the actual extent of Mr. Tillman's reasoning ability to de[sic] substantial work." (R. Doc. 14 at 3-4). The Commissioner suggests that "Plaintiff's argument lacks merit because the ALJ did not include any neurocognitive deficits in Plaintiff's RFC." (R. Doc. 18 at 5).

At the administrative hearing, the ALJ posed the following hypothetical:

> For my next series of questions please assume a hypothetical person of the same age, education, vocational history as the Claimant, further assume that he could work, we put him at the medium exertional level with no climbing of ladders, ropes and scaffolds. The work would have to be of a simple, routine nature with no public interaction, occasional interaction with coworkers and supervisors, the work would need no decision making and few changes in routine. Would there be any jobs?

(Tr. 100).

The VE responded that a hypothetical person with those limitations could perform work as a cook/helper, kitchen helper, and counter supply worker. (Tr. 100-01). Counsel for Plaintiff posed questions to the VE about these jobs regarding the verbal/language requirements, the supervisory interaction, the degree of visuospatial involvement and psychomotor abilities required of each of the jobs, the level of interaction with co-workers, supervisors and the public, unscheduled breaks, and the intellectual level. (Tr. 101-05). The VE responded that the language level of all three jobs was one (Tr. 102), required only one- or two-step tasks (Tr. 102-03), little interaction with supervisors (Tr. 103), a fourth to sixth grade level of reasoning, and a first to third grade level of math and language. (Tr. 105). Regarding interaction with co-workers,

supervisors, or the public, the VE testified that the three jobs would require a person to talk to a co-worker or supervisor at least once or twice per day, and would not be available if a person could not "remain that over the normal course of his employment," presumably meaning that a person could not interact consistently with co-workers or supervisors over the course of his employment, and that there was no requirement of interaction with the public. (Tr. 104). The VE responded that the need to take unscheduled breaks to take a nap would preclude all three positions. (Tr. 104-05).

With regard to counsel for Plaintiff's inquiry to the VE about visuospatial and psychomotor abilities, it appears as though the VE did not understand the terms presented, and counsel for Plaintiff did not translate those terms into specific limitations to be analyzed by the VE. (Tr. 103-04). Plaintiff asked about the degree of visuospatial involvement with each of the jobs, but never posed a hypothetical that included a visuospatial limitation, nor one that had a psychomotor ability limitation. Furthermore, the ALJ did not assess any visuospatial or psychomotor limitations in her RFC assessment such that, even had the VE testified as to those types of limitations, that testimony would be inapplicable to the RFC ultimately assessed as well as the determination of whether Plaintiff could perform other work.

Where the Commissioner suggests in opposition to Plaintiff's position that "[b]ecause the VE testified that Plaintiff could perform jobs *with the RFC that the ALJ found*," the Court agrees. (R. Doc. 18 at 5). Following the ALJ's initial hypothetical, wherein the VE responded that such a hypothetical person could perform work as a cook/helper, kitchen helper, and counter supply worker, the ALJ then added a limitation of "no production-type stress," and the VE responded that "[t]hose three jobs would still be appropriate." (Tr. 101).

By complaining that the hypothetical question failed to include limitations that were not part of the RFC, the Plaintiff is not complaining of the hypothetical question itself but rather the RFC upon which the hypothetical question is based. However, as discussed above, substantial evidence supports the ALJ's RFC finding.  It follows, therefore, that the reversible error did not occur in the ALJ's adoption of the VE's opinions.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on February 15, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**